UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ALEXANDER STEVEN KING,<br><br>                Petitioner,<br>v.<br><br>RENEE BAKER, *et al*.,<br><br>                Respondents. | Case No. 3:18-cv-00202-RCJ-WGC<br><br>**ORDER** |

This is a habeas corpus proceeding commenced under 28 U.S.C. § 2254 by Petitioner Alexander Steen King, a Nevada prisoner who is represented by counsel. Currently before the Court is Respondents' Motion to Dismiss (ECF No. 30). King has opposed (ECF No. 36), and Respondents have replied (ECF No. 45). For the reasons discussed below, Respondents' motion is granted in part and denied in part.

## **BACKGROUND**

### I. STATE COURT PROCEDURAL HISTORY[1]

King challenges a 2014 conviction and sentence imposed by the Third Judicial District Court for Lyon County ("state court") , pursuant to a guilty plea, for the first degree murder (felony murder) of Stuart Tyler Gardner with a deadly weapon. On January 3, 2011, King was committing a residential burglary in Silver Springs, Nevada, when the residents returned home unexpectedly. (ECF No. 26-3.) Gardner gave chase, and King shot him in the chest as he fled the scene. (*Id.*)

On March 18, 2014, a judgment of conviction was entered sentencing King to a maximum term of life in prison with parole eligibility after 20 years, plus a deadly weapon enhancement of a consecutive term of 48–120 months. (ECF No. 22-20.) King filed a direct appeal. The Nevada Court of Appeals affirmed King's conviction in March 2015. (ECF No. 22-25.)

---

[1] This procedural history is derived from the state court record located at ECF Nos. 21–23, 26, and 31.

1

On April 27, 2015, King filed a *pro se* state petition for writ of habeas corpus ("state petition") seeking post-conviction relief. (ECF No. 22-27.) Following an evidentiary hearing, the state court denied the state petition. (ECF Nos. 23-1, 23-2.) King filed a post-conviction appeal. The Nevada Court of Appeals affirmed the state court's denial of relief. (ECF No. 23-7.) A remittitur issued on March 13, 2018. (ECF No. 23-8.)

On May 3, 2018, King initiated this federal habeas proceeding *pro se*. (ECF No. 1.) The Court appointed counsel to represent King and granted leave to amend the petition. (ECF No. 7.) He filed a counseled First Amended Petition for Writ of Habeas Corpus (ECF No. 20) ("amended petition") in March 2019, alleging three grounds for relief under the United States Constitution:

1. King was deprived of his right to effective assistance of counsel under the Sixth and Fourteenth Amendments because –
    A. Trial counsel Kenneth Ward was ineffective at the sentencing stage by failing to present mitigation evidence through medical records and testimony from a clinical psychologist;
    B. Trial counsel Wayne Pederson was ineffective by failing to adequately investigate a defense of coercion and duress; and,
    C. Trial counsel Ward was ineffective by failing to object to Judge William. G. Rogers presiding over King's case despite evidence of risk of judicial bias.
2. King's plea was not voluntary, knowing, or intelligent in violation of his right to due process under the Fifth and Fourteenth Amendments.
3. Judge Rogers' participation in King's case violated his due process rights under the Fourteenth Amendment as it resulted in an intolerable risk of judicial bias.

Respondents moved to dismiss Grounds 1(A), 1(C), 2 and 3 as unexhausted. King's response acknowledges that Grounds 1(C) and 3 are unexhausted but argues he can show cause and prejudice to overcome the procedural default of Ground 1(C). (ECF No. 36 at 3). King presents no arguments to excuse exhaustion for Ground 3. (*Id.* at 3 n.1 ("If required to do so, King will move to voluntarily dismiss Ground 3.").) Respondents' reply withdraws their objection to Ground 2 (ECF No. 45 at 2). Accordingly, the Court's analysis focuses on exhaustion for Ground 1(A) and anticipatory default for Ground 1(C).

///

///

**II. EXHAUSTION**

**A. Legal Standard**

Pursuant to 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. This exhaustion requirement ensures that the state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *E.g.*, *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999)). To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state court level of review available. *O'Sullivan*, 526 U.S. at 844–45. A properly exhausted claim " 'must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief'." *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996)).

Fair presentation requires a petitioner to present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). "A claim has not been fairly presented in state court if new factual allegations either fundamentally alter the legal claim already considered by the state courts, or place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014) (en banc) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988) (internal quotation marks omitted). But a petitioner may reformulate his claims so long as the substance of his argument remains the same. *Picard v. Connor*, 404 U.S. 270, 277–78 (1971). "Regardless of whether or how a petitioner has presented a claim, … that claim has been exhausted if the state courts have in fact ruled on its merits." *Ybarra v. McDaniel*, 656 F.3d 984, 991 (9th Cir. 2011).

**B. Ground 1(A) – Allegations and Procedural History**

In his post-conviction proceeding, King alleged that trial counsel Kenneth Ward's failure at sentencing "to present mitigation evidence by way of mental health records and an evaluation by a

psychologist" was ineffective assistance of counsel ("IAC") under *Strickland v. Washington*, 466 U.S. 668 (1984). (ECF No. 26-4 at 6.) He claimed that Ward failed to present psychological mitigation evidence even though Alfredo M. Amezaga, Ph.D., a licensed clinical psychologist, had evaluated King and was retained to testify at sentencing by previous trial counsel, Wayne Pederson. King claimed such evidence "would have demonstrated that there are many, many psychological scars presented by being the drug baby of an addict who committed suicide, physical and emotional ridiculing because of birth defects,[2] abandonment issues due to the biological dad abandoning the child, and addiction to alcohol and pain medications." (*Id.* at 13–14.)

The state court held an evidentiary hearing in which Ward testified he made a professional decision not to present psychological evidence at sentencing. (ECF No. 23-1 at 55.) Ward testified that "it was important to humanize [King]" since psychological evidence was "already before the court in previous issues;" thus, he focused mitigation on King's hand-written letters expressing remorse and character evidence through the testimony of King's parents. (*Id.* at 53–56.)

The state court denied King's IAC claim, stating that he

> never presented to the Court any evidence of what [Dr. Amezaga's] testimony would actually be. He also failed to provide to the Court any evaluations, medical records, or other evidence which would support his claim. Absent evidence as to what would have actually been presented in addition to the comprehensive rendering of [King's] social and mental health history in the PSI, the Court cannot speculate or guess as to whether the testimony would have had any additional mitigating value to the comprehensive argument presented by Mr. Ward.

(ECF No. 23-2 at 15.) The state court also pointed to Ward's testimony that he made a strategic decision, he fully argued King's mental and social history, and any evidence he would have presented was already before the judge. (*Id.*) The state court found that the sentencing judge considered the mitigation argument and acknowledged King's "history and issues prior to setting the sentence." (*Id.*) Even if the sentencing judge would have considered Dr. Amezaga's "unknown testimony," the state court found no basis to believe the judge would have come to a different conclusion relating to the sentence imposed. (*Id.*) Thus, King failed to support his IAC claim. (*Id.*)

On post-conviction appeal, King alleged an IAC claim for Ward's failure at sentencing "to

---

[2] King is diagnosed with Goldenhar Syndrome, which caused facial/bone deformities. (ECF No. 26-3 at 4.)

present mitigation evidence in support of a lower sentence." (ECF No. 23-4 at 10.) King described facts reported in a competency evaluation performed at Lake's Crossing Center ("LCC"),[3] including: King's congenital defect, two hospitalizations at West Hills Hospital and Northern Nevada Adult Mental Health Services, multiple suicide attempts, history of self-harm, psychotropic medications, and his biological mother's suicide. (*Id.* at 15–16.) The opening brief did not provide further factual allegations or argument. (*See id.* at 30–34.) The answering brief argued that Ward was not ineffective at sentencing because the state court had information about King's childhood, mental health history, education, age, and other appropriate sentencing factors. (ECF No. 23-5 at 24–25 (citing King's PSI, ECF No. 26-3).)

The Nevada Court of Appeals denied King's mitigation IAC claim, finding that "defense counsel made a strategic decision as to what mitigating evidence to present and fully argued King's mental and social history to the sentencing court. The record supports the district court's findings and we conclude King was not deprived of effective assistance of counsel in this regard." (ECF No. 23-7 at 3–4.)

Here, Ground 1(A) alleges an IAC claim against Ward for a failure at the sentencing stage to present mitigation evidence through King's medical records and Dr. Amezaga's testimony. (ECF No. 20 at 10–14.) Pederson obtained medical records from West Hills Hospital, Northern Nevada Adult Mental Health Services, and LCC for use in mitigation. The records describe King's biological mother's drug abuse while pregnant with King and her suicide when King was 23-months old, King's deformities and the resulting abuse and harassment, as well as King's struggles with depression, bipolar disorder, self-harm, and multiple suicide attempts. Pederson retained Dr. Amezaga to provide expert testimony at sentencing, originally set for May 2013.[4] According to Pederson,[5] Dr. Amezaga "had a report available" (ECF No. 22-16 at 12), and would have testified

---

[3] The LCC records consist of a psychiatric and psychological evaluation performed by Lindell Bradley, M.D., and Amy E. Patterson, Ph.D., in February 2011. (ECF No. 26-2.) The state justice court ordered the evaluation before King was bound over for trial. (ECF No. 21-8.)

[4] The May 2013 sentencing was continued because King filed *pro se* motions to dismiss Pederson as counsel and withdraw guilty plea. (ECF Nos. 21-46, 21-47, 21-51.) By the time the motions were resolved and sentencing went forward, new trial counsel—Ward—had been appointed.

[5] Pederson testified about retaining Dr. Amezaga during the February 11, 2014 evidentiary hearing on King's

that because of King's deformities, "he had an overabundance . . . to try to make other people accept him, which then led him to be manipulated by other people in society." (*Id.* at 30.) Ward did not present any medical records or expert testimony for mitigation and instead relied on the testimony of King's adoptive parents, which King argues provided only minimal information about his mental health issues. King alleges that the medical records and Dr. Amezaga's opinion constitute substantial mitigation evidence and would have sympathetically contextualized his behavior and actions. Ward's failure to zealously represent him by presenting this evidence, King contends, amounts to IAC. The amended petition states that Ground 1(A) is exhausted because King raised it in the state petition and on post-conviction appeal. (ECF No. 20 at 14.)

### C. Analysis of Ground 1(A)

Respondents argue that Ground 1(A) is partially unexhausted as it relates to Dr. Amezaga's testimony. (ECF No. 30 at 5.) They point out that King's opening brief to the Nevada Court of Appeals did not mention Dr. Amezaga; thus, any facts relating to his evaluation of King are unexhausted. Respondents further assert that *Cullen v. Pinholster*, 563 U.S. 170 (2011), precludes King from introducing Dr. Amezaga's evaluation for the first time on federal habeas review.

In response, King contends that, if Ground 1(A) is unexhausted to any extent, it is fully unexhausted because it now stands in a significantly different and stronger evidentiary posture. (ECF No. 36 at 8–14.) Although the opening brief facially alleged an IAC claim based on Ward's failure to present mitigation evidence, King notes that post-conviction counsel failed to reference Dr. Amezaga by name or attach the medical records from West Hills Hospital or Northern Nevada Adult Mental Health Services. King maintains that he was coerced into committing the burglary underlying his felony-murder conviction; thus, the medical records and Dr. Amezaga's testimony that King was psychologically prone to manipulation place his IAC claim in a different and stronger position. Because Ground 1(A) amounts to a fundamentally altered claim under *Dickens*, King asserts that *Pinholster* does not preclude review of Dr. Amezaga's opinion.

In reply, Respondents argue that Ground 1(A) is not fundamentally altered. (ECF No. 45 at

---

motion to withdraw guilty plea. (ECF No. 22-16 at 5–37.)

6

2–3.) Respondents first point out that the amended petition represents that Ground 1(A) is fully exhausted. They further contend that, while neither party specifically referenced Dr. Amezaga's testimony in their respective briefs to the Nevada Court of Appeals, both parties referenced King's medical and mental health issues and the evaluation at LCC. (*Id.* at 2 (citing ECF No. 23-4 at 7–8; ECF No. 23-5 at 7).) Respondents assert that Dr. Amezaga's opinion "does not place King in a substantially stronger position than he was in during his state court proceedings – it merely means that the facts specifically related to Dr. Amezaga remain unexhausted." (*Id.* at 3.)

The Court finds that Ground 1(A) is exhausted. Respondents correctly point out that the opening brief did not reference Dr. Amezaga by name. Despite the opening brief's shortcomings, the Nevada Court of Appeals' decision shows that the appellate court considered the arguments and evidence presented to the state court, which included evidence about Dr. Amezaga's testimony, and came to a conclusion on the merits of the IAC claim. *See Chambers v. McDaniel*, 549 F.3d 1191, 1196–99 (9th Cir. 2008). Thus, the decision satisfies the exhaustion requirement. In addition, King's current allegations do not render Ground 1(A) unexhausted because they do not fundamentally alter or strengthen his claim.

In *Dickens*, the Ninth Circuit held that a "previously exhausted IAC claim" may be rendered unexhausted and potentially barred from federal review when a petitioner brings new factual allegations and evidence in his federal petition that significantly strengthen the evidentiary posture of the his claim and thus fundamentally alters it. 740 F.3d at 1318. Dickens made only general allegations in the state habeas proceedings that sentencing counsel did not effectively evaluate whether he suffered from any medical or mental impairment. *Id.* at 1319. Then, for the first time on federal habeas review, Dickens offered new evidence of "specific conditions" (Fetal Alcohol Syndrome and organic brain damage) in support of his IAC claim. *Id.* Because the new factual predicate "substantially improved" Dicken's the evidentiary posture of the "newly enhanced *Strickland* claim," the Ninth Circuit concluded that "the Arizona courts did not have a fair opportunity to evaluate Dicken's altered IAC claim." *Id.*

Here, King alleges that Dr. Amezaga's testimony and the medical records from West Hills Hospital and Northern Nevada Adult Mental Health Services fundamentally alter and improve

7

Ground 1(A). The Court disagrees. First, nothing King has presented to this Court regarding Dr. Amezaga is new evidence. *See Dickens*, 740 F.3d at 1319. Rather, King relies on the same evidence presented to the state court and Nevada Court of Appeals:[6] Pederson's testimony that Dr. Amezaga's would have testified at sentencing that King's deformities caused him to seek acceptance, which led to people manipulating King. (ECF No. 22-16 at 30.) Despite Pederson stating that Dr. Amezaga "had a report available" (ECF No. 22-16 at 12), that evaluation has never been presented to any court—King has only presented Pederson's cursory representation of what Dr. Amezaga's testimony would have been. Pederson's testimony regarding Dr. Amezaga was not presented to this Court in the first instance. Because this evidence is not distinct from what the Nevada courts considered, it does not strengthen Ground 1(A).

Likewise, the medical records from the West Hills Hospital and Northern Nevada Adult Mental Health Services do not place Ground 1(A) in a significantly stronger evidentiary posture because they contain the same information presented to the state court in the PSI, the testimony of King's parents, and the LCC records. Unlike *Dickens*, where the federal district court reviewed evidence of Fetal Alcohol Syndrome and organic brain damage in the first instance; here, the state court reviewed evidence of King's deformities from Goldenhar Syndrome, bipolar disorder, multiple suicide attempts, use of psychotropic medications, abandonment as a child, biological mother's suicide, and susceptibility to influence given his desire to please people. (*E.g.*, ECF Nos. 22-19, 26-2, 26-3.) Although these medical records were presented to this Court in the first instance, they merely provide additional details of King's background and medical or mental impairments. Thus, the records do not "fundamentally alter" or place Ground 1(A) "in a significantly different and stronger evidentiary posture than it was when the [Nevada] courts considered it." *See Dickens*, 740 F.3d at 1318–19.

For these reasons, the Court finds that Ground 1(A) is fully exhausted.

---

[6] A transcript including Pederson's testimony was submitted to the Nevada Court of Appeals on post-conviction appeal. The index to King's appellate appendix shows that the transcript was located at volume 1, pages 191–239. The parties did not submit the index with their exhibits; however, it is available through the Nevada Appellate Courts online records. *See King v. State of Nevada*, Case No. 72398. The Court takes judicial notice of the filings in King's post-conviction appeal. The docket records of the Nevada appellate courts may be accessed online at: http://caseinfo.nvsupremecourt.us/public/caseSearch.do.

## III. PROCEDURAL DEFAULT

As previously noted, both parties agree that Ground 1(C) is unexhausted. However, King contends that the claim is technically exhausted because it would be procedurally defaulted if presented in the state court, but he can excuse the procedural default by showing cause and prejudice pursuant to *Martinez v. Ryan*, 566 U.S. 1, 14 (2012).

### A. Legal Standard

Procedural default "is an important 'corollary' to the exhaustion requirement." *Davila v. Davis*, --- U.S. ----, 137 S. Ct. 2058, 2064 (2017). "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens*, 740 F.3d at 1317 (citing *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002)). Federal habeas review is generally unavailable to a state prisoner where the state courts denied his claim pursuant to an independent and adequate state procedural rule. *Coleman*, 501 U.S. at 750. In such situations, the prisoner has "procedurally defaulted" the claim and federal habeas review is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id.* "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Id.* at 731–32. The procedural default doctrine advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991).

Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default. *Coleman*, 501 U.S. at 754–55. However, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. *Id.* at 16–17. Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused, if state law requires that all claims be brought in the initial collateral review proceeding and if in that proceeding there was no counsel or counsel was ineffective. *Id.* at 17. But *Martinez* cannot excuse the procedural default of a substantive claim of trial-court error, ineffective assistance of appellate

counsel, or "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16–17; *Davila*, 137 S. Ct. at 2064.

**B.  Ground 1(C)**

1.  Procedural History and Allegations

King was represented by five different defense attorneys during his criminal case. He filed multiple *pro se* motions to dismiss Pederson as counsel (ECF Nos. 21-36; 21-46; 21-51), and complained about Pederson in open court (ECF No. 21-29). District Judge William G. Rogers held a hearing in May 2012 to address King's concerns. (ECF No. 21-30.) The judge stated that he approached another public defender, Paul Yohey, and discussed the potential of appointing Yohay if there was a breakdown in communication between King and Pederson. (*Id.* at 4.) King declined Yohey's help at that time. (*Id.* at 12.)

After pleading guilty in March 2013, King filed another *pro se* motion to dismiss Pederson and a motion withdraw his guilty plea. (ECF Nos. 21-46, 21-47, 21-51.) King appeared for sentencing in May 2013. (ECF No. 21-52.) Although sentencing was continued to address the *pro se* motions, King alleges that Judge Rogers made numerous inappropriate comments regarding the plea bargain and King's culpability thus displaying a risk of judicial bias. (*Id.* at 8–9.[7]) Pederson subsequently moved to withdraw as counsel of record. (ECF No. 21-54.)

Judge Rogers' comments prompted the State to file a recusal motion, arguing that the "record contain[ed] several potential *Cripps*[8] violations involving Judge Rogers making statements

---

[7] Specifically, King alleges that Judge Rogers made the following comments showing judicial bias:

> The concern that I have is that Mr. King has obtained what I consider to be significant benefits to his plea bargain. If this plea bargain wasn't here, my range of options would be significantly more than is what is here today…. [If] he thinks he got a bad deal -- you know, there's a saying, thank the Lord for unanswered prayer…. [I]f you get what you want [*i.e.*, withdrawing the plea], in the long run, most of the time it will bite you so bad you won't even believe what's going to happen to you…. You have an option that you can work on this case so hard that you'll never get out of prison."

(*See* ECF No. 20 at 18–19 (citing ECF No. 21-52 at 8–9).)

[8] In *Cripps v. State*, 122 Nev. 764, 137 P.3d 1187 (2006), the Nevada Supreme Court "expressly prohibit[ed] any judicial participation in the formulation or discussions of a potential plea agreement with one narrow, limited exception: the judge may indicate on the record whether the judge is inclined to follow a particular sentencing recommendation of the parties." *Id.* at 770–71, 137 P.3d at 1191. "Any other comments or

which could potentially be construed as improperly inserting himself into the plea negotiations (as well as the relationship between Mr. King and his attorney) at various stages of the proceedings." (ECF No. 22-1 at 3, 13 (asserting that Judge Rogers "made inappropriate statements regarding Mr. Yohey's potential involvement in the case").) Judge Rogers denied the State's motion to recuse, finding that it failed to attach an affidavit in compliance with NRS 1.235.[9] (ECF No. 22-3.) He also granted Pederson's motion to withdraw and appointed Yohey as counsel. (*Id.*)

The State then filed a motion to disqualify Judge Rogers with the requisite affidavit. (ECF No. 22-4.) Yohey opposed the motion on King's behalf. (ECF No. 22-8.) The Nevada Supreme Court temporarily reassigned King's case to Senior District Judge Robert E. Estes to consider disqualification. (ECF No. 22-11.) Judge Estes heard oral argument in October 2013, and denied the State's motion.[10] (ECF Nos. 22-12, 22-13.)

When the case resumed before Judge Rogers in January 2014, Yohey's contract with Lyon County had been terminated and Ward was appointed as King's new trial counsel. (ECF No. 22-14.) The following month, Judge Rogers conducted an evidentiary hearing and denied King's motion to withdraw plea. (ECF Nos. 22-16; 22-18.)

Ground 1(C) alleges that Ward was ineffective by failing to object to Judge Rogers presiding over King's case despite evidence of risk of judicial bias. (ECF No. 20 at 17–22.) King contends that Judge Rogers made inappropriate comments about the plea agreement and had substantive ex-parte communications with Yohey, which created an appearance of impropriety and unconstitutional potential for bias. King argues that an average judge in Judge Rogers' position might be tempted to demonstrate a lack of bias by overcompensating and imposing a harsher

---

discussion by the judge relating to a potential plea must be strictly avoided." *Id.*

[9] Nevada law requires any party "who seeks to disqualify a judge for actual or implied bias or prejudice" to "file an affidavit specifying the facts upon which the disqualification is sought." NRS 1.235(1). If the party is represented by an attorney, the affidavit "must be accompanied by a certificate of the attorney of record that the affidavit is filed in good faith and not interposed for delay." *Id.*

[10] During this hearing, the prosecutor expressed concern regarding ex parte communications between Yohey and Judge Rogers. (ECF No. 22-12 at 5.) The prosecutor told Judge Estes that Yohey confirmed "those communications went beyond mere scheduling concerns, and actually did get to substantive issues." (*Id.*) Judge Estes stated that he would not consider allegations of ex parte communications as they were not part of the record or the State's motion for disqualification. (*Id.* at 5, 15.)

sentence than the one set forth in the plea agreement either to contradict the allegations concerning the ex-parte communications or to show that he had not prejudged the sentence in King's favor. Because Judge Rogers' actions created a constitutionally intolerable potential for bias, King asserts that Ward's failure to move for disqualification violated his right to effective counsel.

2. Analysis

As noted above, King asserts that Ground 1(C) is technically exhausted and he can demonstrate cause and prejudice to excuse the procedural default under *Martinez*. (ECF No. 36 at 3–8.) Respondents argue that King has not shown he has no available remedy in state court. (ECF No. 45 at 3–4.)

A federal court need not dismiss a claim on exhaustion grounds if it is clear that the state court would find the claim procedurally barred. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989); *see also Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc) ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court.").

It is clear that petitioner would face several procedural bars if he were to return to state court with his unexhausted claims. *See, e.g.*, NRS 34.726, 34.810. However, Nevada's procedural bars can be excused for cause and prejudice shown or actual innocence. NRS 34.726(1) (providing that good cause to overcome the time bar exists if the delay was not the petitioner's fault and dismissal will result in undue prejudice); NRS 34.810(3) (placing burden on petitioner to plead and prove specific facts demonstrating good cause and prejudice to overcome bar to successive petition). Apart from the *Martinez* exception,[11] Nevada's cause and prejudice standards are substantially similar to the federal standards. Given the similarity of the standards, virtually any argument that a petitioner might present in federal court to overcome a procedural default can be presented to the state courts in the first instance. It generally is more appropriate for the state courts to have the opportunity in the first instance to consider the application of conclusive procedural bars. *Cf. Gonzalez v. Wong*, 667 F.3d 965, 980 (9th Cir. 2011) (noting that, in the circumstances presented,

---

[11] The Nevada Supreme Court has expressly declined to follow the *Martinez* exception to excuse state procedural bars. *Brown v. McDaniel*, 130 Nev. 565, 571–76, 331 P.3d 867, 871–75 (2014) (en banc).

a stay was appropriate because it provided the state courts with the first opportunity to resolve the claim). Thus, the Court will not hold claims to be exhausted on the premise that a petitioner's claims would be procedurally defaulted in state court absent an unequivocal stipulation by the petitioner that the unexhausted claims in fact would be denied on state procedural grounds if he returned to state court to present the claims. No such stipulation was made in this case. Accordingly, King's request to find Ground 1(C) technically exhausted is denied.

**IV.     OPTIONS ON A MIXED PETITION**

A federal court may not entertain a habeas petition unless the petitioner has exhausted all available and adequate state court remedies for all claims in the petition. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). A "mixed petition" containing both exhausted and unexhausted claims is subject to dismissal. *Id.* Because King's amended petition is mixed, he has three options:

1. File a motion to dismiss seeking partial dismissal of only the unexhausted claims;

2. File a motion to dismiss the entire petition without prejudice in order to return to state court to exhaust the unexhausted claims; and/or

3. File a motion for other appropriate relief, such as a motion for a stay and abeyance asking this Court to hold his exhausted claims in abeyance while he returns to state court to exhaust the unexhausted claims.

**V.     CONCLUSION**

Based on the forgoing, **IT IS THEREFORE ORDERED**:

1. Respondents' Motion to Dismiss (ECF No. 30) is **GRANTED IN PART AND DENIED IN PART**:

    a. Grounds 1(A), and 2 are exhausted in their entirety; and

    b. Grounds 1(C) and 3 are unexhausted in their entirety.

2. Within 30 days of the date of this order, King shall either: (1) file a motion to dismiss seeking partial dismissal of only the unexhausted claims (Grounds 1(C) and 3); (2) file a motion to dismiss the entire petition without prejudice in order to return to state court to dismiss the unexhausted claim (Grounds 1(C) and 3); and/or (3) file a motion for other appropriate relief, such as a motion for a stay and abeyance asking this Court to

hold his exhausted claims in abeyance while he returns to state court to exhaust the unexhausted claims.

3. Failure to timely comply with this order will result in the dismissal of King's mixed amended petition without further advanced notice.

DATED: this 30th day of March, 2020.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE