UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALEXANDER STEVEN KING,<br><br>  Petitioner,<br><br>v.<br><br>TIM GARRETT, *et al.*,<br><br>  Respondents. | Case No. 3:18-cv-00202-RCJ-WGC<br><br>**ORDER** |

This habeas matter is before the Court on Respondents' Motion to Dismiss (ECF No. 67) the second amended petition. Petitioner opposed (ECF No. 70) and Respondents have replied (ECF No. 71). The Court grants Respondents' motion to dismiss Grounds 1(B) and 1(C) as barred under *Tollett*.

**I.    Background**

King challenges a 2014 conviction and sentence imposed by the Third Judicial District Court for Lyon County, pursuant to a guilty plea, for the first degree murder (felony murder) of Stuart Tyler Gardner with a deadly weapon. On January 3, 2011, King was committing a residential burglary in Silver Springs, Nevada, when the residents returned home unexpectedly. (ECF No. 26-3.) Gardner gave chase, and King shot him in the chest as he fled the scene. (*Id.*)

On March 18, 2014, a judgment of conviction was entered, sentencing King to a maximum term of life in prison with parole eligibility after 20 years, plus a deadly weapon enhancement of a consecutive term of 48–120 months. (ECF No. 22-20.) King filed a direct appeal. The Nevada Court of Appeals affirmed King's conviction in March 2015. (ECF No. 22-25.)

On April 27, 2015, King filed a *pro se* state petition seeking post-conviction relief. (ECF

No. 22-27.) Following an evidentiary hearing, the state court denied the state petition. (ECF Nos. 23-1, 23-2.) King filed a post-conviction appeal. The Nevada Court of Appeals affirmed the state court's denial of relief. (ECF No. 23-7.) A remittitur issued on March 13, 2018. (ECF No. 23-8.)

On May 3, 2018, King initiated this federal habeas proceeding *pro se*. (ECF No. 1.) The Court appointed counsel to represent King and granted leave to amend the petition. (ECF No. 7.) He filed a counseled First Amended Petition for Writ of Habeas Corpus (ECF No. 20) ("amended petition") in March 2019, alleging three grounds for relief. The Court granted Respondents' motion to dismiss in part finding Grounds 1(A) and 2 exhausted and that Grounds 1(C) and 3 were unexhausted. (ECF No. 46.) The Court granted King's motion for stay and abeyance to return to state court and exhaust his unexhausted claimed. (ECF No. 49.)

In August 2020, King filed his second state petition seeking post-conviction relief. (ECF No. 57-1.) The state court denied the petition on procedural grounds as successive and untimely. (ECF No. 57-2.) The Nevada Supreme Court affirmed on appeal. (ECF No. 57-4.)

Respondents move to dismiss Grounds 1(C) and 3 as procedurally defaulted having been dismissed on independent and adequate state law grounds. (ECF No. 67 at 6-7.) In addition, Respondents argue that Grounds 1(B), 1(C), and 3 are barred by *Tollett v. Henderson*, 411 U.S. 258 (1973), to the extent those claims raise pre-plea constitutional violations. (*Id*. at 7-8.) In response, King argues he can demonstrate cause and prejudice to overcome the procedural default of Ground 1(C) pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), because initial post-conviction counsel was ineffective for failing to raise the claim. (ECF No. 70 at 5.) King presents no argument to excuse the procedural default of Ground 3 but provides that he will voluntarily dismiss Ground 3 following a ruling on the motion to dismiss. (*Id*. at 5, fn. 1.) King argues that Grounds 1(B) and 1(C) are not barred by *Tollett*.

II.  **Discussion**

   a.  **Whether Grounds 1(B) and (C) are cognizable in federal habeas under *Tollett*.**

Respondents move to dismiss Grounds 1(B) and 1(C) arguing that these claims are not

cognizable in federal habeas under *Tollett* because the claims constitute claims of pre-plea error. In *Tollett*, the Supreme Court held that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." 411 U.S. at 267. Therefore, "[a]s a general rule, one who voluntarily and intelligently pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations." *Hudson v. Moran*, 760 F.2d 1027, 1029–30 (9th Cir. 1985) (citations omitted). A criminal defendant who pleads guilty (or no contest, which is the equivalent of a plea of guilty) "may only attack the voluntary and intelligent character of the guilty plea," *Tollett*, 411 U.S. at 267, by showing that the advice he received from counsel was not "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 770–71 (1970).

### i. Ground 1(B)

In Ground 1(B), King alleges trial counsel rendered ineffective assistance for failure to adequately investigate a duress defense that "King had been coerced by Allan Pluff . . . when he set out to burglarize the home of the victim[.]" (ECF No. 56 at 14-17.) He argues that Ground 1(B) is not barred to any extent by *Tollett* because it implicates the voluntariness of his plea. (ECF No. 70 at 12.) King asserts that he was prejudiced by his trial counsel's failure to investigate a duress defense and that to make an informed decision on whether to plead guilty, his trial counsel should have advised King as to the viability of a duress defense. (*Id.*) King further relies on the Ninth Circuit's decision in *Mahrt v. Beard*, 849 F.3d 1164, 1170 (9th Cir. 2017), that clarifies that the exception to the *Tollett* bar is not limited to incompetent advice from counsel and extends to instances in which "the action, or inaction, of counsel prevent[ed] petitioner from making an informed choice whether to plead." The Government argues in response that Gound 1(B) is barred by *Tollett* because, in Nevada, a duress defense is not available when the crime charged is punishable by death. (ECF No. 71 at 2-3)

The Court finds that Ground 1(B) is barred under *Tollett* for three reasons. First, the

3

Government is correct that Nevada law limits the availability of a duress defense to those crimes which are not punishable by death. Nev. Rev. Stat. § 194.010(8); *Cabrera v. State*, 135 Nev. 492, 498 (2019). Whether or not the prosecutor actually seeks the death penalty is irrelevant when the crime is, by law, punishable by death. *See Cabrera*, 135 Nev. at 495 (interpreting the meaning of Section 194.010(8) by what is "plainly states"). Thus, a duress defense was not available to the charge of first degree murder under the theory of felony murder, to which King pled guilty. (*See* ECF No. 12-16 at 2) Accordingly, an investigation by trial counsel would not have affected his advice to King, therefore, it would not have affected the voluntariness of King's decision.

Second, trial counsel did not act unreasonably by failing to pursue a duress defense to the predicate felony of burglary because such a defense was not supported by any evidence. Nevada law entitles parties to have the jury instructed on all his case theories that are supported by evidence, and a trial court's decision to give or decline instructions is reviewed for abuse of discretion. *Atkinson v. MGM Grand Hotel, Inc.*, 120 Nev. 639, 642 (2004); *see also Camacho v. State*, 135 Nev. 621, 2019 WL 1277576, at *4 (2019). Section 194.010(8) defines duress as an act made "under threats or menaces sufficient to that they had reasonable cause to believe, and did believe, that their lives would be endangered if they refused, or that they would suffer great bodily harm." Evidence must be presented for both elements—that the defendant actually believed they were under duress *and* that they had reasonable cause for that belief. *Camacho*, 2019 WL 1277576, at *4 n.2. The threats to the defendant cannot be general in nature; instead, they must have been imminent and immediate at the time the crime was committed. *Id.* (citation omitted).

The record does not reflect that, prior to trial, there was evidence of either element necessary for a duress defense. There is no evidence to suggest that, at the time of the crime, King felt coerced to enter the victim's home under the belief that his life or physical safety were in danger. King allegedly wrote a letter to trial counsel referring to Pluff as a ringleader similar to Charles Manson, (*see* ECF No. 23-4 at 17, 35), but this indicated to trial counsel that King was

being "manipulat[ed]," not that he was under an immediate belief requisite to show the first element of duress. (ECF No. 23-1 at 39-40)  Although King believed that Pluff used violence as a mode of control generally, he dodged the question of whether his letter states he was coerced into committing the burglary. (ECF No. 23-1 at 85, 93)  Instead, he states that he decided to enter the victim's house because "[o]ut of the options [he] had, that was the better of the two." (*Id.*)  Trial counsel, in fact, testified that King made no mention of feeling threatened to commit the burglary. (ECF No. 22-16 at 35-36)  Instead, it was only after King faced the possibly of "ratting on [Pluff]" that he began to experience threats to himself and his family. (ECF No. 23-1 at 12-13).  King confirms that this was the case in his letter to the victim's family. (ECF No. 22-15 at 4)  Thus, there is no evidence that King believed he was being threatened when he committed the burglary.  While that alone is sufficient to prevent a duress defense, the Court also notes that the record also contains no evidence of whether any such belief would have been reasonable.

Third, despite King's insistence that trial counsel failed to advise him regarding the potential for a duress defense, (ECF No. 56 at 17), the record reflects that trial counsel did advise him regarding this issue, and that his advice was that no such defense existed. (ECF No. 70 at 12); (ECF No. 21-41 at 10); (ECF No. 21-16 at 5)  Based on his communications with King prior to the plea agreement, trial counsel made the reasonable determination that no investigation into potential coercion was necessary because there was no indication that it would produce any evidence of a duress defense.  On that basis, trial counsel advised King that he had no defense to the charge of first degree murder and that "his letter to the family of the deceased [was] a stark admission to the felony murder." (ECF No. 21-51 at 10)  Accordingly, this advice was in the proper range of competence and did not negatively impact the voluntariness of King's plea.

For these reasons, trial counsel's alleged failure to investigate an unviable defense could not have adversely impacted counsel's advice and King's decision to enter a guilty plea. *See Costa v. Baca*, 2023 WL 2663208, at *3 (D. Nev. Mar. 28, 2023) (holding that *Tollett* did not bar relief on the grounds that trial counsel "failed to investigate *viable* defenses" (emphasis added)).

The evidence sufficiently indicated that defense of duress was not available for either the first degree murder charge nor the predicate felony of burglary, and trial counsel advised King as much prior to accepting the plea. Thus, trial counsel was not ineffective such that King's decision to plead guilty was involuntary, and Ground 1(B) is barred by *Tollett*.

### ii. Ground 1(C)

In Ground 1(C), King alleges that counsel rendered ineffective assistance for failure to object to Judge William Rogers presiding over his case despite evidence of risk of judicial bias. (ECF No. 56 at 18-23.) King asserts that Ground 1(C) does not allege any pre-plea constitutional violations as his claim alleges ineffective assistance of counsel who was not appointed to his case until January 8, 2014, after his March 4, 2013, plea. (ECF No. 70 at 14.) In addition, King alleges he was prejudiced by Judge Rogers's failure to follow the terms of the plea agreement. (*Id.*)

As stated above, a habeas petitioner may "attack the voluntary and intelligent character of the guilty plea" based on pre-plea ineffective assistance of counsel "by showing that the advice he received from counsel was not within the range of competence demanded by attorneys in criminal cases." *Tollett*, 411 U.S. at 267-68. "*Tollett*, properly understood, provides that although freestanding constitutional claims are unavailable to habeas petitioners who plead guilty, claims of pre-plea ineffective assistance of counsel are cognizable on federal habeas review when the action, or inaction, of counsel prevents petitioner from making an informed choice whether to plead." *Mahrt*, 849 F.3d at 1170. Here, King does not challenge the knowing and voluntary nature of his plea on the basis that counsel was ineffective for failure to object to the judge presiding over the case.

Because King's ineffective assistance of counsel claim set forth in Ground 1(C) does not attack the knowing, voluntary, or intelligent nature of his plea, Ground 1(C) is barred by *Tollett*. Accordingly, Ground 1(C) is dismissed.

### b. Whether Grounds 1(C), 1(B), and 3 should be dismissed as procedurally defaulted.

The Court addressed Grounds 1(C) and 1(B) in relation to whether it was cognizable in federal habeas under *Tollett*. When a district court concludes that a particular issue is dispositive, it need not "consider alternative reasons for dismissing the petition." *Cooper v. Neven*, 641 F.3d 322, 327–28 (9th Cir. 2011) (rejecting Respondents' contention that the district court erred by proceeding with its procedural bar analysis before first examining whether petitioner's claims were untimely, and finding that the procedural bar analysis rendered the exhaustion issue moot). King does not oppose Respondents' motion to dismiss Ground 3 and provides that he will voluntarily dismiss Ground 3. (ECF No. 70 at 5 fn. 1.)

### III. Conclusion

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 67) is granted. Grounds 1(B) and 1(C) of the second amended petition for a writ of habeas corpus are dismissed as barred by *Tollett*. Ground 3 is voluntarily dismissed by King.

It is further ordered that Respondents have 60 days from the date of this order is entered to file an answer responding to the remaining claims in the second amended petition.

It is further ordered that King will have 60 days following service of the answer to file and serve a reply brief.

DATED this _11th____ day of December 2023.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE